Argued and submitted April 1,
ballot title certified April 10, 1980

BURBIDGE,
*Petitioner,*

*v.*

PAULUS,
*Respondent.*

(SC 26842)

and

SCHROEDER,
*Petitioner,*

*v.*

PAULUS,
*Respondent.*

(SC26843)

and

OREGON COALITION FOR
RESPONSIBLE LIQUOR LAWS, et al,
*Petitioners,*

*v.*

PAULUS,
*Respondent.*

(SC 26844)

609 P2d 815

John R. Faust, Jr., Portland, argued the cause for petitioner Burbidge. Paul R. Romain, Portland, argued the cause for petitioner Schroeder. Don Willner, Portland, argued the cause for petitioners Oregon Coalition for Responsible Liquor Laws and Jack M. Tuell.

Donald Arnold, Salem, argued the cause for respondent.

Before Denecke, Chief Justice, and Howell, Lent, and Peterson, Justices.

PETERSON, J.

## PETERSON, J.

Pursuant to ORS 250.085(1), petitioners seek Supreme Court review of a ballot title for a proposed initiative measure. The proposed measure would replace the present system of distilled spirits sales by the Oregon Liquor Control Commission (OLCC) with a system permitting private sales of distilled spirits by liquor stores, grocery stores and wholesalers, all licensed by OLCC.

The ballot title prepared by the Attorney General under ORS 250.065(3) provides:

"PERMITS PRIVATE DISTILLED SPIRITS
RETAILING/WHOLESALING, OLCC
LICENSED AND REGULATED

"Question: Shall state distilled spirits sales be replaced by private retailing (local government approved) and wholesaling, licensed and regulated by OLCC?

"Explanation: Measure replaces state distilled spirits sales, beginning July, 1981, with private sales by retail groceries, retail liquor stores (limited to number of OLCC agencies) and wholesalers, all OLCC licensed and regulated. Retail licenses also require local government approval. Levies $5.00/gallon distilled spirits tax. Distilled spirits revenue primarily directed to enforcement, licensing, alcoholism rehabilitation and education costs. Reduces state, increases city, county percentage revenue share; sets minimum city, county revenue share at 1980-1981 level."

Petitions challenging the sufficiency and fairness of the proposed ballot title were filed by Keith A. Burbidge (hereafter Burbidge), by Blanche M. Schroeder (hereafter Schroeder), and by the Oregon Coalition for Responsible Liquor Laws and Jack M. Tuell (hereafter Coalition). We granted respondent Secretary of State's motion to consolidate the petitions for hearing and decision. Following an expedited hearing of the petitions, we certify to the Secretary of State the title set out, *infra.* ORS 250.085(3), (4).

We will first set forth the statutory requirements relating to our review of ballot titles before considering the proposed ballot title prepared by the Attorney General and the petitioners' objections thereto.

■ This court is required to review the challenged ballot title to determine whether it is "insufficient or unfair" and whether it complies with the requirements of ORS 250.035. ORS 250.085(1), 250.085(3). ORS 250.035(1) provides that the ballot title is to consist of "(a) [a] caption of not more than 10 words by which the measure is commonly referred to; (b) [a] question of not more than 20 words which plainly states the purpose of the measure, * * * and (c) [a] concise and impartial statement of not more than 75 words of the chief purpose of the measure." We examine the proposed ballot title against the statutory requirements. We are not concerned with whether petitioners' proposed titles may be better or even whether we could devise a better one ourselves. *Pacific Power & Light v. Paulus,* 282 Or 41, 44, 576 P2d 1252 (1978). We turn, then, to each of the petitioners' objections.

### THE BURBIDGE OBJECTIONS

Petitioner Burbidge alleges that the ballot title proposed by the Attorney General is insufficient and unfair in three respects.

The proposed title contains this phrase:

"* * * with private sales by retail groceries, retail liquor stores (limited to number of OLCC agencies) * * *."

Burbidge's first contention is that the respondent's title unfairly conveys the impression that the number of both retail groceries and retail liquor stores is limited to the number of OLCC agencies. Under the proposed initiative, only the number of *retail* liquor stores is limited to the number of OLCC agencies in existence as of June 30, 1981. To remedy this, Burbidge proposes that the wording be changed to read:

"* * * private sales by retail liquor stores (limited to number of OLCC agencies), large retail groceries and wholesalers * * *."

The Attorney General does not object to this suggestion (other than to the use of the word "large"), and we agree that the language, as changed, avoids any possibility of being misunderstood.

■ ■     The second objection raised by Burbidge is to the phrase "Distilled spirits revenue primarily directed to enforcement, licensing, alcoholism rehabilitation and education costs." He argues that this language is inaccurate because it states that all revenues from the sales of distilled spirits will be directed primarily to the stated purposes, when in fact only state tax and licensing revenues will be so used. When the words "distilled spirits revenue" are read in context it is clear that they refer to revenue derived by the state from the $5 per gallon tax on distilled spirits and they do not include profits obtained by the retailers and wholesalers of distilled spirits.[1]

■     Petitioner Burbidge's final contention is that sections 18(3) and 19(2)[2] of the proposed initiative measure significantly change present law by

---

[1] A further question arguably raised by Burbidge is whether only that revenue *retained* by the state, as opposed to that *received* by the state, must be used for the enumerated purposes. The applicable provision in the measure is section 2(2), which provides:

> "Except for the revenue provided to the cities of the state by ORS 471.810(1)(d), after June 30, 1981, all revenue derived by the State of Oregon from distilled spirits shall be used primarily to offset the costs of enforcement of liquor laws, control and licensing, rehabilitation of abusers of alcoholic liquor and education on the proper use of such beverages."

In addition to this section, section 22 of the measure would delete language from ORS 471.810(1)(a) which permits revenues directed to the state General Fund to be "available for general governmental purposes." Thus, with the exception of ORS 471.810(1)(d), ORS 471.810(1) would not direct how the state, cities or counties are to use the money received from liquor revenues. When sections 2(2) and 22 of the proposed measure are read together, however, it is clear that they require all tax revenues received from liquor sales, except those directed to cities under ORS 471.810(1)(d), to be used for the purposes set out in section 2(2) of the measure. It follows, therefore, that the challenged language in the ballot title is neither insufficient nor unfair.

[2] Section 18 of the measure amends ORS 471.455 to provide in part:

permitting retail liquor licensees to own, control, or have an interest in a business holding a distilled spirits warehouse license and vice versa. He argues that the respondent's ballot title is insufficient because it does not indicate this shift in legislative policy.

Until the legislature adopted Oregon Laws 1979, chapter 881, section 7 (codified at ORS 471.456), common ownership or interests between liquor wholesalers and retailers, or "tied houses,"[3] were completely prohibited. The 1979 legislation permits manufacturers or wholesalers to have an interest in retail or restaurant licensees and vice versa, so long as "the interest does not result in exercise of control over, or participation in the management of, the [other's] business or business decisions, and does not result in exclusion of any competitor's brand of alcoholic liquor." ORS 471.456(1), (2).

The statutory amendments incorporated in the measure constitute a significant departure from present law. Most significant is that liquor licensees would be able to exercise control over and participate in the management of the business of other

---

"(3) Notwithstanding the provisions of subsections (1) and (2) of this section, it shall not be unlawful for a licensee who is a retailer of alcoholic liquor to have any right, title, lien, claim or interest, financial or otherwise, in, upon, or to the premises, equipment, business or merchandise of a holder of a distilled spirits warehouse license."

Section 19, amending ORS 471.460, provides in part:

"(2) Notwithstanding the provisions of subsection (1) of this section, it shall not be unlawful for the holder of a distilled spirits warehouse license to have any right, title, lien, claim or interest, financial or otherwise, in, upon or to the premises, equipment, business or merchandise of any retailer of alcoholic liquor."

[3] The term "tied house," although not used in the Oregon statutes, is the title of a federal provision, similar to ORS 471.455 and ORS 471.460, which prohibits distillers, brewers, producers, importers or wholesalers of certain alcoholic beverages from inducing retail sales through, among other practices, acquiring an interest in the retailer. 27 USC § 205(b) (1976). *See* 55 Am Jur 2d, Monopolies § 727 (1971).

licensees in the distribution chain, conduct which was previously prohibited.[4]

The Attorney General, without conceding that omission of the "tied house" provision makes the ballot title insufficient or unfair, agrees that "it would be desirable to include a description of the common ownership in the title." He suggests that language indicating this feature of the proposed measure could be incorporated into the ballot title prepared by the Attorney General by deleting the phrase "beginning July, 1981" and by substituting "for" in place of "directed to." The phrase "Permits common warehouse-retail ownership" could then be inserted. To preserve the 75-word limit, however, one additional word would have to be deleted. This could be accomplished by replacing the words "distilled spirits revenue" with "taxes used" and joining the sentence in which these words occur with the sentence preceding it by a semicolon. With this amendment the ballot title is concise and impartial. Without the amendment, the statement is insufficient.

### THE SCHROEDER OBJECTIONS

Petitioner Schroeder contends that the use of the word "sales" alone in the question and statement prepared by the Attorney General is insufficient and inaccurate because the measure replaces the entire existing system of state sale, purchase, importation and distribution of distilled spirits. She would have us replace the word "sales" with the word "monopoly."

■ We agree with Schroeder that the state's present involvement in the liquor industry within Oregon meets one common definition of a monopoly. The other parties point out, however, that the word "monopoly" may have connotations of unfair and illegal business practice. Monopolizing trade is a crime under the Sherman Antitrust Act, 15 USC § 1 (1976), punish-

---

[4] *See, e.g., Speck Restaurant v. OLCC,* 24 Or App 337, 545 P2d 601, *review denied,* Or (Apr 13, 1976), *appeal dismissed,* 429 US 803, 97 S Ct 35, 50 L Ed 2d 64 (1976).

able by a fine of up to one million dollars and/or imprisonment not exceeding three years. 15 USC § 2 (1976). Government prosecutions of monopolies as early as 1906, in *Standard Oil Co. v. United States*, 221 US 1, 31 S Ct 502, 55 L Ed 619 (1911), have linked the word "monopoly" with illegal restraint of trade. We believe that it would be unfair and partial to use the word "monopoly" in the ballot title. The proposed use of the word "monopoly" is subject to the same criticism as the words "right to work," which we rejected as "obviously argumentative" in *Whelan v. Johnson*, 257 Or 238, 240, 478 P2d 391 (1970). The language proposed by the Attorney General indicates that the present system is "replaced" by one involving private retail and wholesale sales. The extent of OLCC involvement is clearly set forth; the private sales are "OLCC licensed and regulated." We find that the ballot title prepared by the Attorney General is fair and sufficient in this respect.

■    Schroeder's second objection to the ballot title is that the language "Levies $5.00/gallon distilled spirits tax" is unfair and partial without also stating that the new tax replaces the revenues presently obtained by a 94 percent state markup on distilled spirits. We agree that the title should indicate that the $5 per gallon tax will be substituted for the revenues the state receives under the existing law. The words "$5.00/gallon tax substituted for present revenues" convey the change that would be effected by the proposed measure. However, to stay within the 75-word limitation, we delete the word "costs" following the word "education." This deletion works no change in the meaning of the phrase preceding it.

## THE COALITION OBJECTIONS

■    Petitioner Coalition objects to the ballot title because it fails to indicate that the number of grocery stores which could obtain Class A distilled spirit retail licenses is "unlimited." While it is true that the measure places no ceiling on the number of grocery

stores which could receive liquor licenses, it is not true that the licenses are totally "unlimited." One limitation on both Class A and Class B distilled spirits retail licenses is that applicants must obtain the recommendation of the city council (if the business is located within an incorporated city) or the county commissioners or county court (if the business is outside an incorporated city). Proposed Initiative Measure Section 8.

Furthermore, we have altered the language of the ballot title with respect to the order of those entitled to receive licenses so that it is clear that only retail liquor stores are limited in number to the "number of OLCC agencies." The clear inference is that there is no numerical limitation upon either Class A distilled spirits retail licensees (*i.e.,* grocery stores meeting the definition in ORS 472.010(6), as amended) or upon distilled spirits wholesale licensees. We conclude that the language of the proposed ballot title, in this respect, is fair and sufficient.

■ Coalition's other contention is that the ballot title is unfair because it does not mention the "significant loss of revenue" which would result from replacing the present OLCC markup on liquor sales with the $5 per gallon tax. For two reasons, we conclude that the language urged upon us by this petitioner would be inappropriate. First, ORS 250.035(1)(c) provides that the statement in the ballot title is to state concisely and impartially the "chief purpose of the measure." While a loss of state revenue may be an effect of the measure, it is not evident that this is one of its purposes. In *Kegg v. Paulus,* 282 Or 47, 50, 576 P2d 1255 (1978), we stated:

> "The language encompasses petitioner's contention as to the consequences of the adoption of the amendment, rather than its provisions, and as such is, in our opinion, inappropriate for a ballot title and is better the subject for argument to members of the public concerning that which it is claimed will result if they should pass the proposed amendment."

■ Second, when a state measure would reduce state revenues, ORS 250.125 requires that an estimate of the amount involved be printed in the voters' pamphlet and on the ballot.[5] There is no need to reproduce the same information in the ballot title.

As required by ORS 250.085(3), we certify to the Secretary of State the following ballot title:

### PERMITS PRIVATE DISTILLED SPIRITS RETAILING/WHOLESALING, OLCC LICENSED AND REGULATED

Question: Shall state distilled spirits sales be replaced by private retailing (local government approved) and wholesaling, licensed and regulated by OLCC?

Explanation: Measure replaces state distilled spirits sales with private sales by retail liquor stores (limited to number of OLCC agencies), retail groceries and wholesalers, all OLCC licensed and regulated. Retail licenses also require local government approval. Permits common warehouse-retail ownership. $5.00/gallon tax substituted for present revenues; taxes used primarily for enforcement, licensing, alcoholism rehabilitation and education. Reduces state, increases city, county percentage revenue share; sets minimum city, county revenue share at 1980-1981 level.

---

[5] ORS 250.125 provides:

"When a state measure involves expenditure of public money by the state, reduction of state revenues or raising of funds by the state by imposing any tax or incurring any indebtedness, the Secretary of State, with the assistance of the State Treasurer, the Director of the Executive Department and the Department of Revenue, shall estimate the amount of expenditure, reduction in state revenues, tax revenue or indebtedness and interest which will be required to meet the provisions of the measure if it is enacted. The estimate shall state the recurring annual amount involved or, if the measure does not involve a recurring annual amount, the total amount. The estimate shall be certified by at least two of the officials named in this section and, not later than the 90th day before the election at which the measure is to be voted upon, it shall be filed, with the data upon which it is based, with the Secretary of State. The estimate shall be printed in the voters' pamphlet and on the ballot unless the measure involves only administrative expenses not exceeding $50,000 per year."